# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
**Urbana Division**

| | |
|---|---|
| KP, by and through his father SP,<br>JF, by and through his mother AF,<br>DR, by and through his mother MR,<br>AP, by and through her mother PP,<br>SC, by and through her mother AT,<br>TR, by and through his mother CR,<br><br>    Plaintiffs,<br>   v.<br><br>JULIE HAMOS, in her official capacity<br>as Director of the Illinois Department of<br>HEALTHCARE AND FAMILY<br>SERVICES,<br>    Defendants. | Case No. 12-2044 |

## AMENDED REPORT AND RECOMMENDATION

Six children, K.P., J.F., D.R., A.P., S.C., and T.R., in the Central District of Illinois bring suit, through their parents, against Defendant Julie Hamos, in her official capacity as Director of the Illinois Department of Healthcare and Family Services. In a four-count Complaint, Plaintiffs assert that Defendant, by refusing to provide Plaintiffs with treatment for their mental health disorders in integrated settings, has failed to provide them with medically necessary services, in violation of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and discriminated against them, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794. Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims raise federal questions.

In August 2012, Defendant filed her Motion to Dismiss Counts II, III, and IV of Amended Complaint (#32) and Memorandum of Law in Support (#33). Shortly thereafter, Plaintiffs filed their Response to Defendant's Motion to Dismiss Counts II, III, and IV of Complaint (#35). After reviewing the parties' pleadings and memoranda, the Court recommends that Defendant's Motion to Dismiss Counts II, III, and IV of Amended Complaint **(#32)** be **GRANTED IN PART** and **DENIED IN PART**.

I.  Background

The Court takes the following background from Plaintiffs' Amended Complaint (#14), accepting all well-pleaded factual allegations as true.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  Plaintiffs are children who are Medicaid-eligible and have been diagnosed with mental health disorders, as well as emotional, developmental, or behavioral disorders.  Defendant is the Director of the Illinois Department of Healthcare and Family Services ("HFS"), which is the state agency charged with administering Medicaid, the joint federal and state program that funds medically necessary treatment for certain low-income individuals.  Prior to any Medicaid-funded admission to an inpatient hospital for psychiatric services, Medicaid-eligible children are screened through the Screening, Assessment, and Support Services Program ("SASS"), a partnership between HFS and the Illinois Department of Human Services ("DHS").  *See* 305 ILCS 5/5-5.23.  DHS, which is not party to this case, also administers a funding program called the Individual Care Program (though the Complaint provides little information about this program or how it functions).  Defendant is responsible for "obtaining Medicaid reimbursement for services provided to Medicaid eligible children under the Individual Care Program."  (#14, ¶ 114.)

Plaintiffs maintain that Defendant has refused to arrange for and provide them with treatment in integrated settings, either in a residential treatment facility or through intensive home and community-based services.[1]  Defendant "has refused to contract with qualified mental health professionals and providers that are willing and able to provide intensive behavior supports and other mental health treatment in lesser restrictive settings to Medicaid-eligible children."  (#14, ¶ 27.)  Plaintiffs, as a result, have been psychiatrically hospitalized and/or are at risk for future psychiatric hospitalizations, despite the fact that psychiatric hospitalizations are more costly than placement in residential treatment centers or home and community-based services.  Specifically, K.P., J.F., D.R., A.P., and S.C. have been psychiatrically

---

[1] In a status conference on September 14, 2012, Plaintiffs' counsel reported to the Court that, following the initiation of this case, the parties cooperated to place each Plaintiff who required residential treatment in an appropriate facility.

hospitalized—some, numerous times—in the past two years, after Defendant determined, through a SASS screening, that inpatient psychiatric hospitalization was the least restrictive setting available through Medicaid to provide them with medically necessary psychiatric treatment.  K.P. and J.F. cannot reside safely in their families' homes and need treatment in a residential treatment facility.  DHS has denied K.P. and J.F.'s requests for Individual Care Grants, which, the Complaint maintains, would pay for residential treatment.  K.P. and J.F. believe they were denied Individual Care Grants because they have been diagnosed with developmental disabilities.  D.R. also needs residential treatment, as the services available in his community are not sufficient, and the closest Medicaid-approved community health facility is located over fifty miles from his home.  A.P.'s doctor recommended that A.P. receive residential treatment if A.P. did not improve with home and community-based services.  AP has not been able to receive home and community-based services because they are not available where she lives.  Therefore, A.P. seeks either residential treatment or intensive home and community-based services.  S.C. also seeks intensive home and community-based services.  T.R., who does not allege that he has previously been psychiatrically hospitalized, has been found eligible for a grant under the Illinois Individual Care Program.  T.R. has requested treatment in his community but has been unable to obtain it.

Plaintiffs need either intensive home and community-based services or residential treatment and are at risk for future hospitalizations if they do not receive the treatment they request.

Plaintiffs filed this case in February 2012.  In Count I, Plaintiffs bring claims under the Early and Periodic Screening, Diagnostic and Treatment provision of the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and under 42 U.S.C. § 1983 for violations of their rights under the Medicaid Act, alleging that Defendant failed to provide them with medically necessary treatment.  In Count II, Plaintiffs bring claims under Title II of the Americans with Disability Act ("the ADA"), 42 U.S.C. § 12132, and under 42 U.S.C. § 1983 for violations of their rights under the ADA, alleging that Defendant discriminated against Plaintiffs by failing to provide them with treatment in integrated settings.  In Count III, Plaintiffs bring claims under § 504 of

the Rehabilitation Act, 29 U.S.C. § 794, and under 42 U.S.C. § 1983 for violations of their rights under the Rehabilitation Act, alleging that Defendant discriminated against Plaintiffs by failing to provide them with treatment in integrated settings. In Count IV, Plaintiffs seek money damages under the Rehabilitation Act, and under 42 U.S.C. § 1983 for violations of their rights under the Rehabilitation Act.

Plaintiffs seek a declaratory judgment that Defendant has failed to comply with the Medicaid Act, the ADA, and the Rehabilitation Act; an injunction enjoining Defendant from violating Plaintiffs' rights under the Medicaid Act, the ADA, and the Rehabilitation Act; and money damages under the Rehabilitation Act.

## II. Legal Standard

Defendant moves to dismiss Counts II, III, and IV of Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, not to decide the merits of the case. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, the allegations in the complaint must, one, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, two, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554, 555) (alteration omitted).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings. *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012). The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *AnchorBank*, 649 F.3d at 614. Importantly, however, the

Court does not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

### III.  Discussion
#### A.  Count II under the ADA and Count III under the Rehabilitation Act

Defendant moves to dismiss Plaintiffs' claims of discrimination under the ADA and the Rehabilitation Act, and under 42 U.S.C. § 1983 for violations of their rights under the Rehabilitation Act and the ADA, for failure to state a claim.  Title II of the ADA prohibits discrimination in the provision of public services, as follows:  "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The regulations promulgated to effectuate the ADA's anti-discrimination provision provide, in relevant part, that "[a] public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 C.F.R. § 35.130(d).  The Supreme Court, interpreting the ADA's anti-discrimination provision and the regulations' integration mandate, held in *Olmstead v. L.C. ex. rel. Zimring*, 527 U.S. 581 (1999), that "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Id.* at 600.  The Seventh Circuit has explained that "unjustified institutional isolation" likewise violates the Rehabilitation Act, which contains a similar prohibition on discrimination, 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."), and implementing regulation, 28 C.F.R. § 41.51(d) ("Recipients [of Federal funds] shall administer programs and activities in the most integrated setting appropriate

to the needs of qualified handicapped persons."). *See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607-08 (7th Cir. 2004). Thus, a plaintiff may bring claims of discrimination under the integration mandates of both the ADA and the Rehabilitation Act.

An individual with a disability[2] states an integration mandate claim against a public entity, under the ADA, and against a recipient of federal funds, under the Rehabilitation Act,[3] by alleging that 1) an integrated treatment setting is appropriate; 2) the individual does not oppose treatment in an integrated treatment setting; and 3) integrated treatment can be reasonably accommodated, taking into account the state's resources and the needs of other individuals with disabilities. *See Radaszewski*, 383 F.3d at 608, 614-15 ("The allegations of Radaszewski's complaint permit the inference that a home placement remains appropriate for [the plaintiff], that he and his family do not oppose such a placement, and that such a placement can be reasonably accommodated, taking into account the resources available to the state and the needs of others with comparable disabilities."); *see also Olmstead*, 527 U.S. at 587 (holding that placement of individuals with disabilities in community settings is required where "the State's treatment professionals have determined that community placement is appropriate,[4] the transfer from institutional care to a less restrictive setting is not opposed by the affected individual, and the placement can be reasonably accommodated, taking into account the resources available to the

---

[2] Defendant does not dispute that Plaintiffs are individuals with disabilities.

[3] Defendant does not dispute that HFS, the agency of which she is Director, is a public entity under the ADA and a program that receives federal funding under the Rehabilitation Act.

[4] The Seventh Circuit has not required that a plaintiff allege that state treatment professionals have determined that an integrated treatment setting is appropriate; instead, the plaintiff need only allege that an integrated treatment setting *is* appropriate or allege facts that support such an inference. *See Radaszewski*, 383 F.3d at 608 (finding "little doubt that [the plaintiff] can be cared for appropriately at home; he has been receiving care at home . . . , and according to the complaint, he benefits from the support of and interaction with his parents in that environment" (emphasis omitted)).

State and the needs of others with mental disabilities"); *J.T. ex rel. A.F. v. Hamos*, No. 12-CV-03203, 2012 WL 4760645, at *6-7 (C.D. Ill. Oct. 5, 2012); *S.B. ex rel. W.B. v. Hamos*, No. 12-CV-03077, 2012 WL 4740291, at *6 (C.D. Ill. Oct. 3, 2012).

Here, Plaintiffs have stated plausible claims of discrimination under the ADA and Rehabilitation Act: first, they allege that they need either placement in a residential treatment center or intensive home and community-based services in order to address their mental health disorders; second, they do not oppose such treatment; third, they allege that integrated treatment would actually cost Defendant less than psychiatric hospitalization, from which this Court draws the inference that the state could reasonably accommodate Plaintiffs' requested treatment.

Defendant's arguments to the contrary are unavailing. Defendant first asserts that Plaintiffs fail to state a claim under either the ADA or the Rehabilitation Act because the Complaint indicates that Plaintiffs want to be institutionalized, as several Plaintiffs seek placement in a residential treatment facility. However, as Plaintiffs clarify in their response to Defendant's motion to dismiss, there is a difference between psychiatric hospitalization and placement in a residential treatment facility, as the latter would permit Plaintiffs to attend school and engage in community activities. Thus, Plaintiffs seek a more integrated treatment setting than psychiatric hospitalization.

Second, Defendant argues that K.P. and J.F.'s claims under the ADA and Rehabilitation Act fail because it was DHS, not Defendant, that allegedly denied K.P. and J.F.'s requests for grants under the Individual Care Program. Defendant contends that "it is . . . completely unclear how something DHS has declined to do, which allegedly would permit such placement, should be laid at the feet of HFS." (#33, p. 9.) Unfortunately, the Complaint is unclear about the roles that Defendant and DHS play in the Individual Care Program; as to K.P., the complaint states that "K.P. was denied an Individual Care Grant by the Illinois Department of Human Services[,]" (#14, ¶ 113); as to J.F., the Complaint indicates that "J.F. was not considered for referral to the

Individual Care Grant Program through the Illinois Department of Human Services . . . ." (#14, ¶ 157). It appears that Defendant may play a role by "refer[ing]" a child to the Individual Care Grant Program, and, thus, it is may be appropriate to lay the denial of an Individual Care Grant, at least in part, "at the feet of HFS." These facts must be developed further, and Defendant is free to raise this argument at the summary judgment stage. In any event, K.P. and J.F.'s discrimination claims do not hinge solely on the fact that they were denied Individual Care Grants; they allege more broadly that Defendant, not DHS, has failed to arrange for them to receive residential treatment and, instead, placed them in psychiatric hospitals. Thus, even if DHS is solely responsible for the denial of Individual Care Grants, K.P. and J.F. still have plausible claims for relief against Defendant.

Additionally, Defendant urges that Plaintiffs' claim under the Rehabilitation Act fails because they are not "otherwise qualified" for the integrated treatment settings they seek. Citing *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116 (7th Cir. 1997), Defendants maintain that Plaintiffs are not "otherwise qualified" because, "absent the handicap of their mental health disorders, they would not have been eligible for placement in a residential mental health facility in the first place." (#33, p. 11.) *Grzan*, which was not an integration mandate case, recites a traditional pattern of proof for disability discrimination cases that is inapplicable in cases brought under the integration mandate. The *Grzan* court, in evaluating the plaintiff's claim under the Rehabilitation Act that she was subjected to discrimination when her psychiatric counselor enticed her into a sexual relationship, reasoned,

> "Otherwise qualified" means that were she not handicapped, [the plaintiff] would have qualified for the program or treatment she was denied because of her handicap. . . . [The plaintiff] is not "otherwise qualified" because, absent her handicap, she would not have been eligible for treatment in the first place. . . .Without a showing that the non-handicapped received the treatment denied to the "otherwise qualified" handicapped, the appellants cannot assert that a violation of section 504 has occurred.

*Grzan*, 104 F.3d at 120-21 (citations and internal quotation marks omitted). *Olmstead* established, however, that "unjustified institutional isolation" of an individual with a disability violates the ADA (and the Rehabilitation Act), "even in the absence of traditional proof that the disabled person is being treated differently from a nondisabled person who is otherwise similarly

8

situated." *Radaszewski*, 383 F.3d at 607-08 (citing *Olmstead*, 527 U.S. at 598). Therefore, even though Defendant is correct that Plaintiffs have not alleged that they have been denied a benefit that individuals without disabilities have received, Plaintiffs are not required to do so a case brought under the integration mandates of the ADA and the Rehabilitation Act.

Finally, Defendant contends that Plaintiffs' claim under 42 U.S.C. § 1983, for violations of their rights under the Rehabilitation Act,[5] fails "because the Rehabilitation Act provides its own comprehensive enforcement scheme, [and] that scheme may not be bypassed by pleading an underlying violation of [the Rehabilitation Act] and bringing suit directly under Sec. 1983." (#33, p. 12.) Contrary to Defendant's assertions, however, the law of this circuit is not settled on this issue. Indeed, various district courts have come to opposite conclusions, *compare Silk v. City of Chicago*, No. 95 C 0143, 1996 WL 312074, at *18-19 (N.D. Ill. June 7, 1996) (dismissing plaintiff's claims under § 1983 for violations of ADA and Rehabilitation Act), *with River Forest Sch. Dist. No. 90 v. Ill. State Bd. of Educ.*, No. 95 C 5353, 1996 WL 89055, at *6 (N.D. Ill. Feb. 28, 1996) (denying motion to dismiss § 1983 claim for Rehabilitation Act violations), and neither the Supreme Court nor the Seventh Circuit has definitively addressed whether a plaintiff may bring claims under 42 U.S.C. § 1983 for violations of rights under the ADA and the Rehabilitation Act. *See Zachary M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202*, 829 F. Supp. 2d 649, 663 (N.D. Ill. 2011).

The parties offer the Court little assistance in resolving the issue: Defendant provides no analysis of the Rehabilitation Act's enforcement scheme; likewise, Plaintiffs respond to Defendant's argument in only a footnote. The Court notes that Judge Myerscough, when deciding motions to dismiss earlier this month in cases nearly identical to this one, faced precisely this argument from Defendant (as well as a lack of briefing from both sides).

---

[5] Defendant does not assert that Plaintiffs' claim under 42 U.S.C. § 1983, for violations of their rights under the ADA, fails for the same reason, although Defendant notes, in a parenthetical to a case she cites in support, that "Section 1983 claims may not rest on the ADA or the Rehabilitation Act." (#33, p. 12.)

*See J.T. ex rel. A.F. v. Hamos*, No. 12-CV-03203, 2012 WL 4760645, at *7 (C.D. Ill. Oct. 5, 2012); *S.B. ex rel. W.B. v. Hamos*, No. 12-CV-03077, 2012 WL 4740291, at *7 (C.D. Ill. Oct. 3, 2012). Because the briefing from the parties was minimal, Judge Myerscough declined to decide the issue at the motion to dismiss stage and, instead, denied the motion to dismiss and invited Defendant to raise the issue again in a motion for summary judgment. The Court agrees with Judge Myerscough's sound approach and, thus, recommends denying Defendant's motion to dismiss Plaintiffs' § 1983 claim for Rehabilitation Act violations and inviting Defendant to raise this argument in a motion for summary judgment.

**B.  Count IV: Damages under the Rehabilitation Act and 42 U.S.C. § 1983**

In Count IV, Plaintiffs seek damages under the Rehabilitation Act and under 42 U.S.C. § 1983, for violations of their rights under the Rehabilitation Act. Defendant argues that these claims fail because damages are only available under the Rehabilitation Act where the defendant was deliberately indifferent to the plaintiff's rights. Defendant maintains that Plaintiffs advance only conclusory allegations of "deliberate indifference," without any factual allegations that would support an inference of deliberate indifference.

As an initial matter, although Defendant does not raise this argument, the Court finds that Plaintiffs' claim under 42 U.S.C. § 1983 for damages, which is brought against Defendant in her official capacity, fails because "defendants are immune from suit under § 1983 for monetary damages in their official capacities." *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Therefore, the Court recommends that Plaintiffs' claim under § 1983 for damages be dismissed.

As to Plaintiffs' claim for damages under the Rehabilitation Act, compensatory damages are an available remedy for discrimination claims brought under the Rehabilitation Act, *see Barnes v. Gorman*, 536 U.S. 181, 187-89 (2002),[6] but only upon a showing that the defendant

---

[6] Compensatory damages are also available under the anti-discrimination provision of the ADA, *see Barnes*, 536 U.S. at 187-89, but Plaintiffs seek damages only under the Rehabilitation Act.

acted with discriminatory intent. *See Zachary M.*, 829 F. Supp. 2d at 662; *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 917-18 (N.D. Ill. 2009) (ADA case) (noting that Seventh Circuit has yet to address issue definitively but collecting cases from other circuits holding that a discriminatory intent is required for compensatory damages). A plaintiff may establish discriminatory intent by showing that the defendant acted with "deliberate indifference," that is, "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Phipps*, 681 F. Supp. 2d at 918 (citation and internal quotation marks omitted). "Deliberate indifference can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Id.* (citation and internal quotation marks omitted).

The Court finds that Plaintiffs have alleged sufficient facts to give rise to an inference of deliberate indifference. Plaintiffs allege that defendant is "well aware" that many children in Illinois with mental health disorders are not receiving medically necessary treatment. (#14, ¶ 6.) As of 2009, of the more than 18,000 children in Illinois with "severe mental illness and severe emotional disturbances," only 220 received intensive community-based services. (#14, ¶¶ 7-8.) Nonetheless, Defendant has refused to contract with providers that are prepared to offer treatment in integrated settings to Medicaid-eligible children and, instead, "opts to fund children living with behavioral and emotional problems in hospitals and institutions." (#21, ¶ 21.) Accepting these allegations as true, the Court makes the reasonable inference that Defendant—though faced with the strong likelihood that her policies will result in unjustified institutionalization of Medicaid-eligible children like Plaintiffs, in violation of the Rehabilitation Act—has failed to act to remedy this situation. Plaintiffs have alleged sufficient facts to support an inference of deliberate indifference and, therefore, state a plausible claim for damages under the Rehabilitation Act.

## IV.  Summary

For the reasons discussed above, this Court recommends that Defendant's Motion to Dismiss Counts II, III, and IV of Amended Complaint **(#32)** be **GRANTED** as to Plaintiffs' claim, in Count IV, for damages under 42 U.S.C. § 1983, and **DENIED** as to all other claims.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 25th day of October, 2012.

                                                 s/DAVID G. BERNTHAL
                                    UNITED STATES MAGISTRATE JUDGE